## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ADAM GILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.    1:18-cv-07891 |
| | ) | |
| MARK CURRAN, JOHN IDLEBURG, | ) | Hon. Judge Ruben Castillo |
| LAKE COUNTY EMPLOYEE/AGENT | ) | |
| D. HOLLINGSWORTH (#1348), | ) | |
| TARYN WEILER, | ) | |
| MITESHKUMAR MODI, | ) | |
| ALLA CHUKHRAY, | ) | |
| ALVARO ENCINAS, | ) | |
| LAKE COUNTY EMPLOYEE/AGENT | ) | |
| VARNER (#6310), | ) | |
| JENNIFER LEE, | ) | |
| MARKUS RELIFORD, | ) | |
| DAVE WATHEN, | ) | |
| UNKNOWN LAKE COUNTY SHERIFF | ) | |
| OFFICE EMPLOYEES, | ) | |
| COUNTY OF LAKE, | ) | |
| LAKE COUNTY SHERIFF'S OFFICE, and | )) | |
| ARMOR CORRECTIONAL HEALTH | ) | |
| SERVICES INC. | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT AT LAW

HERE COMES the Plaintiff, ADAM GILL, by and through his attorneys, ALEKSY

BELCHER, and for his First Amended Complaint at Law against Defendants, MARK

CURRAN, JOHN IDLEBURG, LAKE COUNTY EMPLOYEE/AGENT D.

HOLLINGSWORTH (#1348), TARYN WEILER, MITESHKUMAR MODI, ALLA

CHUKHRAY, ALVARO ENCINAS, LAKE COUNTY EMPLOYEE/AGENT VARNER

(#6310), JENNIFER LEE, MARKUS RELIFORD, DAVE WATHEN, UNKNOWN LAKE

COUNTY SHERIFF OFFICE EMPLOYEES, COUNTY OF LAKE, LAKE COUNTY

SHERIFF'S OFFICE, AND ARMOR CORRECTIONAL HEALTH SERVICES, INC., states as follows:

## Introduction

1.     Adam Gill was permanently disabled in a Lake County, Illinois correctional facility because the Defendants failed to provide Gill with reasonable accommodations, namely a lower bunk bed, despite knowing that Gill had a history of seizures and epilepsy. Due to Defendants' failure to provide adequate medical care, which Defendants' staff had previously ordered, Gill fell from a top bunk bed while sleeping, struck his head, and sustained physical, cognitive and emotional injuries.

2.     This is a civil rights action brought to redress Gill's federally protected rights under the Civil Rights Act, 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. §794 et seq., and tort laws.

## Jurisdiction and Venue

3.     This Court has jurisdiction of the action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 1343(a), and the Constitution of the United States; it also has supplemental jurisdiction as provided by 28 U.S.C. § 1367.

4.     Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to these claims occurred in this district.

## The Parties

5.     At all times relevant, Gill was an inmate in the Lake County and Lake County Sheriff's correctional facilities. He served a prison term in the Lake County Adult Corrections

Facility and was later transferred to the inmate work release center, also known as the
Community Based Corrections Center.

6.      Defendant Mark Curran was the Sheriff of Lake County at the time of Gill's
injury. He is sued here in his official capacity as the former Sheriff of Lake County. At all times
relevant to the events at issue in this case, Defendant Curran was acting under color of law. As
Sheriff, Defendant Curran was in charge of the Lake County Adult Corrections Facility, the work
release center and persons in custody of Lake County's correctional system. At all times relevant
to the events at issue in this case, Defendant Curran was responsible for promulgating rules,
regulations, policies, and procedures as the Sheriff of Lake County for the provision of medical
care by medical personnel and correctional staff.

7.      Defendant John Idleburg is the current Sheriff of Lake County. He is sued here in
his official capacity as Sheriff of Lake County. At all times relevant, Defendant Idleburg was
acting under color of law. As Sheriff, Defendant Idleburg is in charge of the Lake County Adult
Corrections Facility, the work release center and all persons in custody of Lake County's
correctional system. Defendant Idleburg has policymaking authority over the correctional system
and its staff for the actions at issue in this case. Here, Defendant Idleburg is responsible for
promulgating rules, regulations, policies, and procedures as Sheriff of Lake County for the
provision of medical care by medical personnel and correctional staff.

8.      At all times relevant to the events at issue in the case, Lake County
employee/agent D. Hollingsworth #1348 was an officer at the Lake County Adult Corrections
Facility and/or the work release center. D. Hollingsworth #1348 is sued here in his individual
capacity. At all times relevant to the events at issue in the case, D. Hollingsworth #1348 was
acting under color of law and within the scope of his employment.

3

9.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Taryn Weiler was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Weiler is sued here in her individual capacity. At all times relevant to the events at issue in the case, Weiler was acting under color of law and within the scope of her employment.

10.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Miteshkumar Modi was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Modi is sued here in his individual capacity. At all times relevant to the events at issue in the case, Modi was acting under color of law and within the scope of his employment.

11.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Alla Chukhray was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Chukhray is sued here in his individual capacity. At all times relevant to the events at issue in the case, Chukhray was acting under color of law and within the scope of his employment.

12.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Alvaro Encinas was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Encinas is sued here in his individual capacity. At all times relevant to the events at issue in the case, Encinas was acting under color of law and within the scope of his employment.

13.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Officer Varner (#6310) was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center.

4

Varner is sued here in his individual capacity. At all times relevant to the events at issue in the case, Varner was acting under color of law and within the scope of his employment.

14.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Jennifer Lee was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Lee is sued here in her individual capacity. At all times relevant to the events at issue in the case, Lee was acting under color of law and within the scope of her employment.

15.     At all times relevant to the events at issue in the case, Lake County and/or Armor Correctional Health Services, Inc. employee/agent Markus Reliford was an officer and/or medical clinician at the Lake County Adult Corrections Facility and/or the work release center. Reliford is sued here in his individual capacity. At all times relevant to the events at issue in the case, Reliford was acting under color of law and within the scope of his employment.

16.     At all times relevant to the events at issue in the case, Lake County employee/agent Dave Wathen was a chief at the Lake County Adult Corrections Facility and/or the work release center. Wathen is sued here in his individual capacity. At all times relevant to the events at issue in the case, Wathen was acting under color of law and within the scope of his employment.

17.     Defendant Lake County, including unknown employees and agents thereof, is a municipal corporation duly incorporated under the laws of the State of Illinois. The County operates the Lake County correctional facilities, including the Lake County Adult Correctional Facility and the inmate work release center. Lake County must obtain and provide reasonably necessary health services for detainees in the correctional facilities. At all times relevant to the

events at issue in the case, Defendant County of Lake, by and through its agents, was acting under color of law and in its capacity as a local government.

18. Defendant Lake County Sheriff, including unknown employees and agents thereof, is a department of Lake County. Lake County Sheriff manages, operates and maintains the Lake County correctional facilities, including the Lake County Adult Correctional Facility and the inmate work release center. Lake County Sheriff must obtain and provide reasonably necessary health services for persons in the custody of the County and residing at the County's correctional facilities. At all times relevant to the events at issue in the case, Defendant Lake County Sheriff, by and through its employees/agents (some presently unknown), was acting under color of law and in its capacity as a government department.

19. Defendant Armor Correctional Health Services, Inc., including employees and agents thereof, contracted with the County of Lake and/or the Lake County Sheriff to provide reasonably necessary health care to persons in the custody of Lake County and/or Lake County Sheriff, including Gill. The health care was to be commensurate with National Commission on Correctional Healthcare (NCCHC) standards, Prison Rape Elimination Act (PREA) and American Correctional Association (ACA) standards, including medical, dental, mental health and claims management services to adult inmates. The contract was in effect on the date of Gill's injury. At all times relevant, Defendant Armor Correctional Health Services was acting within the scope of its contract, as the agent of Lake County and the Lake County Sheriff, and under the color of law.

### Background

20. On June 13, 2017, Gill was booked into the Lake County correctional facility. At all times relevant, he was in the custody of Lake County and Lake County Sheriff.

21.     As part of the intake process, Gill was screened by several employees and/or agents of Lake County, Lake County Sheriff and Armor Correctional Health Services, all acting in the scope of their employment and under the color of law.

22.     Lake County, Lake County Sheriff and Armor Correctional Health Services employees and/or agents documented Gill's medical conditions, created medical records, and shared such medical records with staff working in the correctional facilities, so as to provide Plaintiff with necessary health services.

23.     On June 13, 2017, Lake County, Lake County Sheriff and Armor Correctional Health Services nurse Taryn Weiler identified Gill as having epilepsy and seizures. Weiler's note stated as follows: "Yes – Active (details) (epilepsy, last seizure 6/12/17)."

24.     On June 13, 2017, Weiler noted that Gill was currently receiving medication for seizures.

25.     On June 13, 2017, Weiler wrote that Gill required special needs/housing consideration: "Low Bunk (sz disorder)."

26.     After the intake process, Gill continued to receive medical care and screenings from Lake County, Lake County Sheriff and Armor Correctional Health Services employees and/or agents, all acting in the scope of their employment and under the color of law.

27.     On June 29, 2017, Lake County, Lake County Sheriff and Armor Correctional Health Services employee and/or agent Miteshkumar Modi noted that Gill had a history of epilepsy.

28.     On August 14, 2017, an Lake County, Lake County Sheriff and Armor Correctional Health Services employee and/or agent noted that Gill had a neurological condition: Seizure/Epilepsy.

7

29.     On September 7, 2017, Gill advised Lake County, Lake County Sheriff and Armor Correctional Health Services employee and/or agent Alvaro Encinas that he had migraine and "hot flashes" feelings in his head.

30.     On November 8, 2017, Gill reported to Lake County, Lake County Sheriff and Armor Correctional Health Services employee and/or agent Alla Chukhray that his seizures were exacerbated by stress. Several seizure-related medications were prescribed and administered to Gill.

31.     On January 20, 2018, Gill reported to Alla Chukhray that he had a history of seizures and epilepsy.

32.     On or around February 6, 2018, Gill was transferred from the Lake County Adult Correctional Facility to the inmate work release center. Gill remained in the custody of Lake County and Lake County Sheriff at all times relevant.

33.     On or around February 6, 2018, Gill authorized Lake County Sheriff's Community Based Correction Center to release any and all pertinent information to treatment facilities, medical facilities (including hospitals and medical offices), social service agencies, and educational programs/curriculum, so as to provide him with continued, necessary medical care.

34.     On or around February 6, 2018, Gill was assigned to a top bunk, despite his requests for a lower bunk and the medical orders of the agents and/or employees of the Lake County, Lake County Sheriff and Armor Correctional Health Services.

35.     On or around February 6, 2018, Lake County, Lake County Sheriff and Armor Correctional Health Services agents and/or employees failed to provide Gill with seizure medication.

36.     On or around February 6, 2018, Lake County, Lake County Sheriff and Armor Correctional Health Services staff was aware that Plaintiff had not taken any seizure medication.

37.     On or around February 6, 2017, Gill advised Defendant D. Hollingsworth #1348 and/or other Lake County, Lake County Sheriff and/or Armor Correctional Health Services that he had not taken seizure medication since arriving at the work release center.

38.     On or around February 7, 2017, Gill requested that D. Hollingsworth #1348 transfer him from a top bunk to a lower bunk, due to his medical condition and fear of falling.

39.     Lake County, Lake County Sheriff and Armor Correctional Health Services agents and/or employees failed to re-assigned Gill to a lower bunk.

40.     In the early morning of February 8, 2018, Gill had a seizure while sleeping in his top bunk. Gill fell to the ground, resulting in physical, cognitive, and emotional pain, suffering and limitations.

41.     In the early morning of February 8, 2018, Lake County Sheriff Sgt. S. Wilson reported, "4T Gill, Adam L162791 5A medical emergency – seizure fell from top bunk – take to vista east hospital via Waukegan rescue report #18-01428 – copy to CBCC director and Jail admin."

42.     In the early morning of February 8, 2018, Lake County and Lake County Sheriff staff wrote a report stating, "On 2/8/18 at approximately 0125 while relieving 4T from break, I Officer Verner heard a loud bang coming from the sleeping area and residents calling for help. Resident Gill, Adam #162791 had fallen from top bunk 5A and was having a seizure."

43.     Lake County, Lake County Sheriff and Armor Correctional Health Services staff responded to the scene of Gill's fall, particularly Officer Varner, nurse Jennifer Lee and nurse Markus Reliford.

44.     On February 9, 2018, Officer Varner wrote that "On February 9 (sic), 201(sic) at 0130 hours resident Gill, Adam L 162791 had a seizure and fell off of the top bunk and on to the floor in Tower 4 bed 5A. Armor Nurse Jennifer Lee and Markus Reliford responded. Gill was unresponsive and had blood in his right ear. Waukegan Rescue was called and Gill was transported to Vista East Hospital."

45.     Several inmates were interviewed in relation to Gill's fall in the days following the incident.

46.     Inmate Arrez Sion stated Gill was vocal about his epilepsy before the fall.

47.     Inmate Sergio Conejo-Valerio stated Gill mentioned needing to be on a bottom bunk before the fall.

48.     Inmate Joshua Troche stated he saw Gill almost fall out of his top bunk the day before the fall. Troche saw Gill fall from the top bunk on February 8, 2018 while having a seizure.

49.     Inmate Correy Moore recalled Gill stating he should not be on the top bunk and recalled seeing Plaintiff almost fall from the top bunk a day or two before the subject fall.

50.     Inmate Dartanion Smith stated Gill told the prison staff that he was prone to seizures and should not be on the top bunk prior to the fall.

51.     Inmate Timothy Knieling stated he heard Gill complain of a "migraine headache" the night of the fall.

52.     Inmate David Valent stated he saw Gill holding his head in his hands earlier in the day before the fall.

53.     Inmate Raymond Steward stated Gill should not have been placed on a top bunk due to prior seizures.

10

54.     Inmate James Fassbinder stated Gill had complained of a migraine headache the night of the fall. Gill told Fassbinder that he was supposed to be on medications for seizures and asked how to get re-assigned to a bottom bunk.

55.     Inmate Stevenson Borrero overheard Gill expressing concern about his bunk assignment on the day of the fall.

56.     Inmate Nicholas Poindexter stated Gill had been nervous about being on a top bunk.

57.     Inmate Francisco Nunez stated Gill complained of a migraine the night of the fall.

58.     On March 30, 2018, D. Hollingsworth #1348 wrote to Chief Dave Wathen that, on February 6, 2018, Plaintiff had stated to prison staff that he was "on meds for seizures and 3 other meds." Plaintiff had advised that he had not received and/or taken medications for seizures since arriving at the work release center. Hollingsworth wrote that on the morning of February 7, 2018, Plaintiff asked if he could move from a top bunk to a bottom bunk, as he "didn't get much sleep 'last night' due to thinking he was going to fall."

59.     Neither D. Hollingsworth #1348 nor any employee and/or agent of Lake County, Lake County Sheriff's Office and/or Armor Correctional Health Services, Inc. provided Gill with seizure medications and/or a bottom bunk assignment prior to the subject fall.

**Count I – 42 U.S.C. § 1983 Denial of Medical Care (Fourth Amendment)**
**(Against Defendants Curran, Idleburg, D. Hollingsworth (#1348), Weiler, Modi, Chukhray, Encinas, Varner (#6310), Lee, Reliford, Wathen, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

60.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

61.     As described more fully above, Gill had serious medical needs. Defendants were aware of Gill's medical needs and the seriousness of those needs.

62.     Despite that knowledge, Defendants failed to provide Gill with adequate medical attention and/or accommodations, such as providing a bottom bunk bed assignment or ensuring he had seizure medication. Defendants further failed to ensure that Gill's medical information, history, and needs were transferred from one correctional facility to another.

63.     The misconduct described in this Count was objectively unreasonable. Alternatively, the misconduct was undertaken intentionally, with malice, and/or with reckless indifference to Gill's safety and health.

64.     As a result of Defendants' unjustified and unconstitutional conduct, Gill's constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

65.     Gill's injuries were caused by the policies, practices, and customs of Defendant Curran.

66.     At all times relevant to the events at issue in this case, Defendant Curran was responsible for ensuring that individuals housed at the Lake County correctional facilities, including Gill, received constitutionally adequate medical care, and was equally responsible for the creation, implementation, oversight, and supervision of policies, practices, and customs regarding the provision of medical care to persons in the custody of the Lake County Sheriff.

67.     Gill's injuries were also caused by the policies, practices, and customs of Defendant Idleburg.

68.     At all times relevant to the events at issue in this case, Defendant Idleburg was responsible for ensuring that individuals housed at the Lake County correctional facilities, including Gill, received constitutionally adequate medical care, and was equally responsible for

the creation, implementation, oversight, and supervision of policies, practices, and customs regarding the provision of medical care to persons in the custody of the Lake County Sheriff.

69.     At all times relevant to the events described in this Complaint and for a period of time beforehand, one or more policymakers at the Lake County Sheriff's Department had notice of a widespread practice and custom by correctional and medical staff at the Lake County correctional facilities to deny appropriate medical care to individuals with serious medical needs. For example, one or more policymakers were made aware of the misconduct which led to the following published events and/or lawsuits:

(a)     *Siwula v. Correct Care Solutions,* Case No.: 1:12-cv-02096 (N.D. Ill.), in which a prisoner was paralyzed after Lake County employees and/or agents allegedly failed to treat his serious spinal cord injuries, despite having notice of the conditions. Lake County Undersheriff Ray Rose said there had been a failure to supervise the guards responsible for the incident, stating the supervisor on duty at the time did nothing to properly oversee or investigate the 2011 incident. (https://www.dailyherald.com/article/20140528/news/140528272/)

(b)     *Dennis v. Curran, et al,* 16-cv-06014 (N.D. Ill.) in which the Lake County inmate suffered severe injuries in 2016, after falling several times while trying to maneuver from his wheelchair to non-accessible shower and toilet. The inmate requested handicapped/wheelchair accommodations, which were allegedly not provided by Lake County staff. The County was aware that the Plaintiff was wheelchair-bound.

(c)     *Johansen v. Curran, 2015 WL 4978702,* in which an inmate alleged sufficient facts that Lake County and its agents failed to provide necessary medical attention.

(d)     See In Re: Edward Robinson III, in which Lake County Sheriff Mark Curran released a video showing jail guards and command officers doing nothing after an inmate Robinson was found unresponsive. Robinson later died. He had been housed in an individual cell because Lake County guards noticed he was lethargic and had trouble communicating earlier on the subject date. The County had notice of Robinson's health conditions, including schizophrenia, and his need for medication. The Sheriff admitted there was a "problem with him taking (the medication)" the day of the incident. Sheriff Curran stated, "There was no rush to do CPR and no concern," among the Lake County staff. (https://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-jail-death-video-st-1004-story.html)

(e)    In 2012, inmate Lyvita Gomes died after a 15-day hunger strike at the Lake County correctional facility. The County was allegedly aware of the inmate's mental illness. (https://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-jail-death-video-st-1004-story.html)

(f)    In 2016, inmate David Butterfield died in Lake County jail from a medical condition that involved a massive, untreated abdominal infection. (https://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-jail-death-video-st-1004-story.html)

(g)    Current Lake County Sheriff Idleburg, a defendant in this action, was quoted criticizing the policies and procedures of his predecessor Curran. He said, "This is the seventh death under Mark Curran and is a reflection of his poor leadership. The department needs reform. Demoting key staff is not a long-term solution. It's reactionary. Because of the multiple deaths in the jail, we need changes in the policy and procedures. It's unacceptable to have another death in the jail. Curran said he knew changes were needed at the jail, but Curran choose politics over responsibility." (https://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-jail-death-video-st-1004-story.html). Curran was the Lake County Sheriff at the time of Gill's injury.

70.    The above widespread practices and customs, so well settled as to constitute de facto policies of Lake County, were able to exist and thrive, individually and/or together, because one or more policymakers at the Lake County Sheriff, with authority over those policies, practices, and customs, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

71.    Additionally, at all times relevant to the events described in this Complaint and for a period of time before and after, Defendants Curran and Idleburg, in their official capacity, failed to promulgate proper or adequate policies, practices, customs, or procedures to ensure that adequate medical care was provided to individuals at the Lake County correctional facilities.

72.    At all times relevant to the events described in this Complaint and for a period of time beforehand, one or more policymakers at Lake County, the Lake County Sheriff, or Armor Correctional Health Services, Inc., had notice of a widespread practice and custom by

14

correctional and medical staff at the Lake County correctional facilities to deny appropriate medical care to individuals with serious medical needs.

73.     The misconduct described in Lake County and the Lake County Sheriff was undertaken pursuant to the policies and practices of the County of Lake in that the constitutional violations committed against Gill were committed with the knowledge and approval of persons with final policymaking authority for Lake County, or were actually committed by persons with such final policymaking authority.

74.     Gill's injuries were caused by officers, agents, and employees of Lake County, the Lake County Sheriff, and Armor Correctional Health Services, Inc., including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**Count II – 42 U.S.C. § 1983 Due Process (Fourteenth Amendment)**
**(Against Defendants Curran, Idleburg, D. Hollingsworth (#1348), Weiler, Modi, Chukhray, Encinas, Varner (#6310), Lee, Reliford, Wathan, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

75.     Gill incorporates each paragraph of this Complaint as if fully restated here.

76.     In the manner described more fully above, Defendants violated Gill's constitutional rights.

77.     By refusing to provide Gill with a bottom bunk bed assignment, Defendants caused and/or increased the danger to Gill's health and safety. In addition, Defendants failed to promptly and properly protect Gill after they became aware of his condition, including the fact that he was not on seizure medications.

78.     Defendants' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others, including Gill.

15

79.     Defendants' failure to protect Gill "shocks the conscience" in that Defendants knew of the serious threat that Gill faced a result of the Defendants' misconduct.

80.     As a result of Defendants' unjustified and unconstitutional conduct, Gill's constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**Count III – 42 U.S.C. § 1983 Failure to Intervene (Fourth & Fourteenth Amendments)**
**(Against Defendants Curran, Idleburg, D. Hollingsworth (#1348), Weiler, Modi, Chukhray, Encinas, Varner (#6310), Lee, Reliford, Wathen, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

81.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

82.     As described more fully above, Defendants had a reasonable opportunity to prevent the violation of Gill's constitutional rights as set forth above had they been so inclined, but failed to do so.

83.     Defendants were aware for months before Gill's injury that he had a seizure disorder and required a bottom bunk. Further, Lake County, Lake County Sheriff, and Armor Correctional Health Services, Inc. agents and/or employees were specifically made aware of Gill's condition and bottom bunk request in the day before his injury.

84.     Defendants' failures to act were objectively unreasonable. Alternatively and/or additionally, Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Gill's rights.

85.     As a result of Defendants' unjustified and unconstitutional conduct, Gill's constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**Count IV – 29 U.S.C. § 794 (Rehabilitation Act)**
**(Against Defendants Curran, Idleburg, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

16

86.     Gill incorporates each paragraph of this Complaint as if fully restated here.

87.     Section 504 provides that "[]no otherwise qualified individual with a disability in the United States …shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794.

88.     Section 504 requires covered entities to provide reasonable accommodations to enable qualified individuals with disabilities to participate in the program or activity.

89.     Defendants are subject to the Rehabilitation Act, as entities of local governments that receive federal financial assistance and/or private organizations principally engaged in health care services and receiving federal funds. 29 U.S.C. §794(b); C.F.R. § 27.1.

90.     Gill is a qualified individual with a disability pursuant to Section 504 because he is substantially limited in neurological function and other major life activities when seizures occur.

91.     By failing to provide Gill with the reasonable accommodation of a lower bunk assignment, as requested by the medical staff and Gill, himself, Defendants discriminated against Plaintiff in violation of Section 504.

92.     Defendants' conduct was intentional and deliberately indifferent to Gill's federally protected rights.

93.     As a result of Defendants' unjustified and unlawful conduct, Gill's Federally-protected rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**Count V – 42 U.S.C. § 12132 (American with Disabilities Act)**
**(Against Defendants Curran, Idleburg, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

17

94.     Gill incorporates each paragraph of this Complaint as if fully restated here.

95.     Under Title II of the Americans with Disabilities Act (ADA), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

96.     The ADA requires public entities to provide reasonable accommodations to qualified individuals with disabilities to enable them to benefit from the service and participate in the program or activity.

97.     Gill is a qualified individual with a disability pursuant to the ADA because he is substantially limited in neurological function and other major life activities when seizures occur.

98.     By failing to provide Gill with the reasonable accommodation of a lower bunk assignment, Defendants discriminated against Gill in violation of the Americans with Disabilities Act.

99.     Defendants' conduct was intentional and deliberately indifferent to Plaintiff's federally protected rights.

100.    As a result of Defendants' unjustified and unlawful conduct, Gill's federally protected rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**Count VI – State Law Claim**
**Negligent or Willful and Wanton Conduct**
**(Against Defendants Curran, Idleburg, D. Hollingsworth (#1348), Weiler, Modi, Chukhray, Encinas, Varner (#6310), Lee, Reliford, Wathen, Lake County, Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)**

101.    Gill incorporates each paragraph of this Complaint as if fully restated here.

102.    Defendants owed Gill a duty of reasonable care so as to not cause him injury.

18

103. Defendants knew Gill had a seizure disorder and knew he required a bottom bunk to prevent serious injury. In the manner described more fully above, the Defendants' actions breached the duty of care that they owed to Gill.

104. Defendants breached their duty of care by failing to provide the lower bunk assignment that Gill required.

105. Defendants breached their duty of care by failing to properly monitor and observe the Gill in light of his known medical condition.

106. Defendants breached their duty of care by failing accommodate Gill's request – and their own staff's orders – for a lower bunk.

107. Defendants breached their duty of care by failing to provide Plaintiff with seizure medication.

108. Defendants breached their duty of care by failing to ensure Gill received immediate and urgent medical attention, including the proper type of medication and housing accommodations, upon transfer to a new correctional facility/area.

109. Defendants breached their duty of care by not ensuring that medical information, including Gill's urgent medical needs, such as seizure medication and/or lower bunk accommodations, was shared with appropriate medical and/or correctional staff, upon Gill's transfer between correctional facilities.

110. Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others, including Gill. Defendants were aware that they were placing Gill's health and safety in serious peril as a direct result of the above-described course of action and recklessly disregarded the consequences of those actions.

19

111.    As a direct and proximate result of Defendants' actions, Gill suffered severe pain, anguish, suffering, and emotional distress, and continues to suffer other grievous and continuing injuries and damages as set forth above.

### Count VII – State Law Claim Respondeat Superior
### (Against Defendants Curran, Idleburg, County of Lake and Lake County Sheriff's Office, Armor Correctional Health Services, Inc.)

112.    Gill incorporates each paragraph of this Complaint as if fully restated here.

113.    In committing the acts alleged in the preceding paragraphs, the individual defendants, and other presently unknown persons, were employees, members, and agents of Lake County and the Lake County Sheriff, acting at all relevant times within the scope of their employment.

114.    In committing the acts alleged in the preceding paragraphs, the individual defendants, and other presently unknown persons, were agents/employees of Armor Correctional Health Services, Inc., acting at all relevant times within the scope of their employment.

115.    Defendants Lake County and Lake County Sheriff's Office are liable for the actions of their employees acting within the scope of their employment under state law.

116.    Defendants Curran and Idleburg, in their official capacities as Sheriff of Lake County, are liable for the actions of their employees acting within the scope of their employment under state law.

117.    Defendant Armor Correctional Health Services, Inc. is liable for the actions of its employees acting within the scope of their employment under state law.

118.    As a direct and proximate result of Defendants' agent/employees actions, Gill suffered severe pain, anguish, suffering, and emotional distress, and continues to suffer other grievous and continuing injuries and damages as set forth above.

### Count VIII – State Law Claim Indemnification
### (Defendant Lake County, Lake County Sheriff Office)

119.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

120.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

121.    At all times relevant to the events at issue in this case, each of the other Defendants were employees and/or agents of Lake County and/or Lake County Sheriff and were acting within the scope of their employment in committing the misconduct described above.

### Damages

122.    That as a direct and proximate result of one or more of the aforementioned acts and/or omissions of the Defendants, the Plaintiff sustained severe and permanent injuries, both internally and externally, and was and will be hindered and prevented from attending to his usual duties and affairs and has lost and will in the future lose the value of that time, as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages, in excess of $75,000, plus the costs of this action and attorneys' fees, and such other and additional relief as this court deems equitable and just. These equitable demands

21

include, but are not limited to (a) implementing training and policies to insure that lower bunk orders are entered immediately, with no delay; (b) implement training and policies to insure that detainees receive timely and proper medication and that such administration of medication is properly documented, and (c) that emergency contacts are promptly notified when the detainee has been seriously injured.

PLAINTIFF DEMANDS TRIAL BY JURY          DATED: January 28, 2019

                                    Respectfully submitted,
                                    /s/ Bryant M. Greening
                                    One of the Attorneys for Plaintiff

Bryant M. Greening
ALEKSY BELCHER
350 N. LaSalle Dr., Ste. 750
Chicago, IL 60654
T: 312-670-9000
F: 312-670-9115
ARDC No. 6306065
b.greening@aleksybelcher.com